IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANKLYN MEDINA,<br><br>Plaintiff,<br><br>v.<br><br>STERLING INFOSYSTEMS, INC.<br><br>Defendant. | Civil Action No. 2:17-cv-01165-JHS<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Franklyn Medina ("Plaintiff"), by and through his attorneys, on behalf of himself, the Invasion of Privacy Class set forth below, and in the public interest, brings this Class Action Complaint against Sterling Infosystems, Inc. ("Defendant"), pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## INTRODUCTION

1. This is a case about privacy. Defendant routinely and systematically violates the FCRA's basic protections by providing consumer reports to entities (1) that have not certified to Defendant their compliance with 15 U.S.C. § 1681b(b)(2), as required by 15 U.S.C. § 1681b(b)(1)(i), and (2) which Defendant knows have failed to comply with 15 U.S.C. § 1681b(b)(2).

2. As a consumer reporting agency that provides reports for employment purposes, Defendant has an obligation to *only* provide consumer reports to entities that have received written authorization from the subject of the report, and who have certified to Defendant their compliance with the same. 15 U.S.C. § 1681b(b)(1)(i).

3. However, Defendant ignores this obligation, sending reports to companies who not only have not certified their compliance, but who Defendant actually knows have not complied.

4. This conduct violates both the clear language of the FCRA and longstanding regulatory guidance governing the circumstances in which consumer reporting agencies may provide consumer reports. Both the legislative history of the FCRA and on-point FTC guidance make clear that a consumer's written authorization is not fungible. Any corporation which procures a consumer report for employment purposes must have its own written authorization to do so.

5. Defendant's practice of providing background reports on consumers to companies that did not have written authorization was routine and systematic. Plaintiff therefore asserts claims for damages on behalf of himself and a Class of similarly situated individuals on whom Defendant furnished a consumer report to a company who had not first obtained written authorization.

6. Plaintiff in this action seeks in excess of $50,000.00 in monetary damages for himself and the proposed Class, and hence the amount in dispute exceeds the amount requiring arbitration pursuant to the local rules of the Philadelphia Court of Common Pleas.

## THE PARTIES

7. Plaintiff Franklyn Medina is an individual residing in Wallingford, Pennsylvania.

8. Defendant Sterling Infosystems is a Delaware Corporation, with its principal place of business in New York. Defendant does business in every state in the country, including Pennsylvania.

## JURISDICTION AND VENUE

9. Plaintiff originally filed this case in the Philadelphia Court of Common Pleas. That court had jurisdiction over Plaintiff's claims based on concurrent jurisdiction under 15 U.S.C. § 1681p.

10. The Courts of Common Pleas of this Commonwealth are endowed with full authority as provided by law, which extends to causes of action arising under federal law. 42 Pa. C.S.A. § 931.

11. The Court of Common Pleas had personal jurisdiction over Defendant.

12. Venue in the Court of Common Pleas was proper under Pennsylvania Rules of Civil Procedure 1006 and 2179 because Defendant regularly conducts business in Philadelphia County.

13. Defendant removed this action to this Court, invoking this Court's jurisdiction. (ECF No. 1.)

## STATUTORY BACKGROUND

14. Despite its name, the Fair Credit Reporting Act regulates not only credit reports, but also criminal background checks. *See* § 1681a(d)(1)(B) (defining "consumer report" as including reports which are for the purpose of establishing the consumer's eligibility for employment).

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing; second, that despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the *confidentiality*, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681 (emphasis added).

17. Through the FCRA, Congress mandated that consumer reports are private.

3

18. Congress made it illegal for a consumer reporting agency to furnish a consumer report without the recipient having a permissible purpose for doing so. *See generally* § 1681b ("a consumer reporting agency may furnish a consumer report under the following circumstances and no other…").

19. Congress also required that anyone who was procuring a consumer report have a "permissible purpose" for doing so. *Id.*

20. Many of the permissible purposes established by Congress do not require the consumer's authorization or consent. For example, when a consumer applies for credit, the potential creditor may procure a report without even notifying the consumer, much less obtaining the consumer's permission. 15 U.S.C. § 1681b(c).

21. In the context of reports procured for employment purposes, however, Congress went above and beyond the normal requirement that the person procuring the report merely have a permissible purpose for doing so.

22. With respect to reports procured for employment purposes, Congress required employers to disclose to applicants that a consumer report would be obtained for employment purposes before procuring the report. 15 U.S.C. § 1681b(b)(2)(A)(i). Congress viewed this disclosure as so important that Congress mandated that the disclosure be provided "in a document consisting solely of the disclosure."

23. In addition to requiring the disclosure, Congress also required employers to obtain written authorization from the consumer "for the procurement of the report *by that person*." 15 U.S.C. § 1681b(b)(2)(A)(ii) (emphasis added).

24. Going even further, Congress then required that consumer reporting agencies ("CRAs"), before providing a consumer report for employment, obtain a certification from the

4

recipient of the report that the recipient had complied with the authorization and disclosure requirements. 15 U.S.C. § 1681b(b)(1)(A)(i). Further, CRAs are not entitled to simply rely on certifications that they know are not accurate. Rather, CRAs have a duty to ensure that they are furnishing reports only in lawful circumstances. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 676 (9th Cir. 2010).

25. Congress made clear that consumer reports cannot be distributed to unauthorized corporate entities. In 15 U.S.C § 1681a(d)(2)(iii), Congress excluded from the definition of consumer report "communication …among persons related by common ownership or affiliated by corporate control" only "if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons." In all other circumstances, such communication is regulated by the FCRA.

26. The legislative history of the FCRA clearly indicates that Congress's purpose in requiring CRAs to obtain this certification was to protect consumers' privacy.

27. A prime motivation for the FCRA was the impact of third-party data collection on the employment market and particularly on individual job seekers. When it passed the FCRA, Congress voiced a strong "concern[ ]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees...may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995). The FCRA thus "sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers." *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004), *aff'd*, 135 F. App'x 499 (3d Cir. 2005); *see also id.* at

436.

28. The certification requirement at issue here is contained in 15 U.SC. § 1681b, titled "Permissible Purposes of Consumer Reports." Absent the certification, it is illegal for a CRA to provide a job applicant's consumer report for employment purposes. *See* § 1681b(b)(1) ("A consumer reporting agency may furnish a consumer report for employment purposes only if…the person who obtains such report from the agency certifies to the agency that…the person has complied with paragraph (2) [the disclosure and authorization requirement] with respect to the consumer report").

29. As one legislator explained, the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants;" the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections").

## **ALLEGATIONS RELATING TO PLAINTIFF'S CLASS ACTION CLAIMS**

30. Defendant operates as a consumer reporting agency that sells reports for employment purposes.

31. Defendant is a consumer reporting agency within the meaning of the FCRA because it sells background reports to paying customers in order to help those customers evaluate applicants and employees for employment purposes. *See generally* www.sterlingtalentsolutions.com (site last visited Feb. 6, 2017); *see also* www.sterlingtalentsolutions.com/About/About-Us (site last visited Feb. 6, 2017) ("Since 1975, we've been serving organizations . . . with high quality

employment screening and hiring solutions . . . our team of more than 3,500 employees proudly serves over 50,000 customers around the world.").

32. In addition to preparing, selling and furnishing consumer reports, Defendant also serves as a liaison between companies procuring reports and the consumers who are the subjects of those reports.

33. Specifically, Defendant provides an electronic interface whereby it purports to send a FCRA-compliant authorization form to consumers whereby the consumer can authorize Defendant's client to receive a report on the consumer.

34. Defendant emails authorization forms to consumers/job applicants. The consumers/job applicants can then electronically sign those forms to authorize Defendant's client to receive a consumer report about the consumer.

35. This service is valuable to Defendant because it is an additional revenue stream for Defendant's business. Moreover, it allows Defendant to automate the fulfillment process; as soon as Defendant receives the consumer's electronically signed form, it sends a report to its client.

36. In early 2015, Plaintiff applied for work in Philadelphia through a staffing agency called Set and Service Resources.

37. On or about February 11, 2015, an individual named Ashley Kropp sent Plaintiff an email from an email address called backgroundcheck@aespeo.com.

38. The email said it was "sent by Sterling on behalf of Set and Service Resources."

39. The email asked Plaintiff to click a link taking him to Sterling's website where he would "review and complete an electronic consent and authorization to procure a background check."

40. The email said that before any information was "collected through Sterling's secure website" he would "have the opportunity to learn more about your rights under the Fair Credit Reporting Act and the privacy and security of the information you provide."

41. The email did not mention a company named Omega Solutions, LLC or Omega Resource Solutions, LLC.  Nor did it disclose that a company named AES Management, Inc. was going to procure the report, instead of Set and Service Resources.

42. Despite the fact that the email said it was "sent by Sterling, a consumer reporting agency, on behalf of Set and Service Resources" the initials "AES" appeared under Ms. Kropp's name.

43. The email contained no information about who (or what) AES was.  It did not include an address, a telephone number, a description of what AES did, or any other information about AES.

44. After Plaintiff clicked on the link to the Sterling site, Plaintiff was presented with the document attached hereto as Exhibit A.

45. Exhibit A purports to be a disclosure form and authorization to procure a background check.  The only entity named on this form was Omega Solutions, LLC.

46. Plaintiff signed Exhibit A electronically.

47. Via a separate email on February 11, 2015, Omega Resource Solutions, LLC (which is a separate company from Omega Solutions, LLC) informed Plaintiff that it had contracted with "SaSR" to "enhance the variety of human resources services you receive."  Omega Resource Solutions, LLC's email also informed Plaintiff that, to be eligible for work, he was required to submit an I-9 form.

48. In this email, Omega Resource Solutions, LLC touted its respect for Plaintiff's confidentiality, stating that it was "committed to a strict standard of confidentiality." The email did not mention background checks.

49. Plaintiff did not wish to work in merchandising any further, and never returned the I-9 form that Omega Resource Solutions, LLC told him was a condition for continued work.

50. On or around February 12, 2015, Defendant sent AES Management, Inc. a consumer report on Plaintiff. The report stated at the top that it was being sent to "Administrative Employer Services."

51. Because the report contained information regarding whether Plaintiff had a criminal history, the background check contained information regarding Plaintiff's "character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d).

52. Because the background report contained information regarding Plaintiff's "character, general reputation, personal characteristics, or mode of living," the background check was a consumer report as defined under the FCRA. 15 U.S.C. § 1681a(d).

53. Defendant never obtained the certification required by 15 U.S.C. § 1681b(b)(1) from AES Management, Inc.

54. Further, Defendant knew AES Management, Inc. had failed to obtain Plaintiff's written authorization prior to procuring a consumer report on him.

55. Exhibit A, which Defendant sent to Plaintiff, does not mention AES Management, Inc. Instead, Exhibit A mentions only Omega Solutions, LLC.

56. Despite the lack of written authorization to do so, and despite the fact Defendant had not received any certification from AES Management, Inc., it sent Plaintiff's report directly to AES Management, Inc.

9

57. Absent AES Management, Inc.'s certification, Defendant lacked any legal basis to provide Plaintiff's report to AES Management, Inc.

58. Defendant knew it did not have this certification when it sent Plaintiff's report. Further, even if it did have such a certification, it would know that the certification was false, because Defendant received Plaintiff's written authorization form, which only mentioned Omega Solutions, LLC.

59. As long ago as 1998, the FTC opined on the circumstances under which two parties may share consumer reports with one another. *See* Advisory Opinion to Throne (Nov. 20, 1998) 1998 WL 34323719.

60. The FTC made it clear that all users of consumer reports must have a permissible purpose for using the report. *Id.*

61. In the context of reports obtained for employment purposes, 15 U.S.C. § 1681b(b)(2)(A)(ii) requires that all users have received written authorization for the "procurement of the report by that person."

62. AES Management, Inc. had no such written authorization, and therefore lacked a permissible purpose under the FCRA.

63. Moreover, Plaintiff's consent to the procurement of the report was not properly informed by Exhibit A, which named only Omega Solutions, LLC. Nor was it properly informed by the email, which did not mention Omega at all, but instead said it was being sent by Sterling on behalf of Set and Service Resources.

## **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

64. Defendant knew that it had an obligation to obtain a certification from AES Management, Inc. before furnishing a consumer report on Plaintiff.

65. Defendant was sued over four years ago for failing to ensure that its clients had obtained written authorization from consumers before furnishing consumer reports. *Ernst v. DISH Network, LLC*, No. 1:12-cv-08794 (S.D.N.Y Dec. 4, 2012).

66. Defendant was also recently criticized in an audit conducted by the state of Pennsylvania regarding its compliance with a data use contract with the Department of Transportation. The audit criticized Defendant for, among other failings, having "inadequate controls over the use of personal information."

67. Despite the *Ernst* litigation, Defendant continues to play fast and loose with the FCRA's requirements.

68. Defendant ignores the FCRA's strict privacy protections because it is in its interest to do so. Many of Defendant's customers are entities with non-traditional workforce arrangements, such as AES Management, Inc. (which provides human resource services to third-party employers) or DISH Network (which uses a network of third-party companies to provide its workforce). The fact that these entities are receiving copies of consumers' reports is often totally unknown to the consumers, as they have little or (as in Plaintiff's case) no direct contact with the consumer.

69. Rather than exposing its clients' business arrangements and revealing the specific identities of the people to whom it is selling reports, Defendant instead feigns compliance with the FCRA, sending authorizations which name entities other than those to whom it is actually providing reports.

70. Defendant knew that the FCRA governed its actions, and its actions are directly contrary to the FCRA's requirements that Defendant obtain certifications, and that the entity procuring the report from Defendant must have written authorization to do so.

11

71.     Interpreting the FCRA to allow unnamed parties to obtain consumer reports directly from CRAs would directly undermine the requirement of the FCRA that the authorization be for the procurement of the report "by that person."

72.     By systematically failing to ensure that it had certifications from its clients that they had obtained Plaintiff's and other Class members' written authorizations to procure their reports, Defendant willfully violated 15 U.S.C. § 1681b(b)(1).

73.     As a result of Defendant's failure to comply with the FCRA, Plaintiff and Class members experienced a concrete injury in the form of having their privacy invaded by Defendant furnishing their consumer reports when it had no legal right to do so.

74.     As a result of Defendant's failure to comply with the FCRA's certification requirement, Plaintiff and Class members experienced a concrete injury in the form of being deprived of information, namely, the true identity of the party that would procure their reports.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this case as a class action pursuant to Pa. R. Civ. P. 1701-16. Now that the case has been removed, Plaintiff contends that the proposed Class also satisfies the requirements of, and should be certified pursuant to, Fed. R. Civ. P. 23.

76.     Plaintiff asserts his Claim on behalf of himself and the proposed **Invasion of Privacy Class** defined as follows:

> All individuals on whom Defendant furnished a consumer report for employment purposes where Defendant was responsible for sending electronic authorization forms to the consumer which named an entity other than the entity to whom the reports were furnished and/or where Defendant provided reports to an employment end-user despite not having received the required certification from the end-user. Class membership begins on the date two years prior to the filing of Plaintiff's initial Complaint, and continues through the date on which the class list is prepared.

77.     The Class satisfies the requirements for class certification.

12

78.     Numerosity: The Class membership is so numerous that joinder of all Class members is impracticable. Defendant furnished reports on thousands of workers, many of whom are members of the Class.

79.     Typicality: Plaintiff's claims are typical of the members of the Class. It is typical for Defendant to furnish consumer reports for employment purposes, and Defendant often furnishes consumer reports to entities other than those named on the authorization forms it provides. The FCRA violations suffered by Plaintiff are typical of those suffered by other Class members, and Defendant treated Plaintiff consistently with other Class members in accordance with its standard policies and practices.

80.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class because he and his experienced and well-financed counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Class.

81.     Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a. Whether Defendant furnishes consumer reports for employment purposes;

   b. Whether Defendant furnishes consumer reports to entities other than those named on the authorization forms;

   c. Whether Defendant violated the FCRA by furnishing consumer reports to entities it knew had not obtained consumer consent as required by the Act;

   d. Whether Defendant's violations of the FCRA were willful; and

   e. The proper measure of damages against Defendant.

82.     Class certification is appropriate because, *inter alia*, questions of law and fact common to the Class predominate over any questions affecting only individual members of the

Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action is not likely to present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

83. In view of the complexities of the issues and the expenses of litigation the separate claims of individual Class members are insufficient in amount to support separate actions.

84. Yet, the amount which may be recovered by individual Class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by Class counsel or a third party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

85. Plaintiff intends to send notice to all members of the Class to the extent required. The names and addresses of the Class members are available from Defendant's records.

## CLAIM FOR RELIEF

### *Furnishing Reports to Entities Who Lack a Permissible Purpose*
### 15 U.S.C. § 1681b(b)(1)
### (On Behalf of Plaintiff and the Invasion of Privacy Class)

86. Defendant violated the FCRA by furnishing consumer reports on Plaintiff and the Invasion of Privacy Class members to end-users which Defendant knew had not obtained the informed written consent required by the FCRA. *See* 15 U.S.C. § 1681b.

87. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the Invasion of Privacy Class members. In addition to the conduct set forth above, Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b, and that Defendant had documents in its possession which showed it was sending reports to entities which did not have written authorization to receive them. Further:

(a) The written authorization provision was enacted in 1996 and has been in force since Defendant's founding;

(b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance; judicial interpretation, and the plain language of the statute;

(c) Defendant repeatedly and routinely uses the same unlawful documents it provided to Plaintiff with numerous applicants on whom it furnishes consumer reports;

(d) Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically furnished consumer reports without first obtaining written authorization to do so;

(e) Defendant has been sued for this same conduct before; and

(f) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

88. Plaintiff and the Invasion of Privacy Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Invasion of Privacy Class members are

also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Invasion of Privacy Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

89. WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

    (a)    Determining that this action may proceed as a class action;

    (b)    Designating Plaintiff as a Class Representative and designating Plaintiff's counsel as counsel for the Class;

    (c)    Issuing proper notice to the Class at Defendant's expense;

    (d)    Declaring that Defendant violated the FCRA;

    (e)    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    (f)    Awarding statutory damages and punitive damages as provided by the FCRA;

    (g)    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

    (h)    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Date: May 4, 2017                                 /s/Joseph C. Hashmall
                                                                        E. Michelle Drake
                                                                         Joseph C. Hashmall
`                                                 Admitted *pro hac vice*
                                                  BERGER & MONTAGUE, P.C.
                                                  43 SE Main Street, Suite 505
                                                  Minneapolis, MN 55414
                                                  Telephone: 612-594-5999
                                                  Facsimile: 612-584-4470
                                                  emdrake@bm.net
                                                  jhashmall@bm.net

                                                  Ryan Allen Hancock, PA Bar No. 92590
                                                  Bruce M. Ludwig, PA Bar No. 23251
                                                  WILLIG, WILLIAMS & DAVIDSON
                                                  1845 Walnut Street, 24th Floor
                                                  Philadelphia, PA 19103
                                                  Telephone: 215-656-3679
                                                  Facsimile: 215-561-5135
                                                  rhancock@wwdlaw.com

                                                  *ATTORNEYS FOR PLAINTIFF AND
                                                  PROPOSED CLASS MEMBERS*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing was served on counsel of record for Defendant by electronic mail on May 4, 2017.

Date: May 4, 2017                                 /s/Joseph C. Hashmall
                                                                        Joseph C. Hashmall

# EXHIBIT A

**CONSENT TO REQUEST CONSUMER REPORT & INVESTIGATIVE CONSUMER REPORT INFORMATION**

I, __Medina__    __Franklyn__    __Ray__ _____

   LAST NAME      FIRST NAME     MIDDLE NAME          (PLEASE INCLUDE Jr., Sr., II, III Etc.)

I understand that Omega Solutions LLC ("COMPANY") will use **Sterling Infosystems Inc., 1 State Street, New York, NY 10004, (877) 424-2457** to obtain a consumer report and/or investigative consumer report ("Report") for employment purposes. I also understand that if hired, to the extent permitted by law, COMPANY may obtain further Reports throughout my employment for an employment purpose from Sterling. I authorize COMPANY to provide a copy of any reports obtained to any interested parties which requests to see a report or reports as a condition precedent to any work assignment. I may revoke this authorization at any time.

I understand Sterling InfoSystems Inc.'s ("STERLING") investigation may include obtaining information regarding my character, general reputation, personal characteristics and standard of living, driving record and criminal record, subject to any limitations imposed by applicable federal and state law. I understand such information may be obtained through direct or indirect contact with former employers, schools, financial institutions, landlords and public agencies or other persons who may have such knowledge. If an investigative consumer report is being requested, I understand such information may be obtained through any means, including but not limited to personal interviews with my acquaintances and/or associates or with others whom I am acquainted.

The nature and scope of the investigation sought is indicated by the selected services below: **(Employer Use Only)**

- SSN Trace
- Criminal Background Check
- OFAC/Terrorist Watch List

I acknowledge receipt of the attached summary of my rights under the Fair Credit Reporting Act and, as required by law, any related state summary of rights (collectively "Summaries of Rights").

This consent will not affect my ability to question or dispute the accuracy of any information contained in a Report. I understand if COMPANY makes a conditional decision to disqualify me based all or in part on my Report, I will be provided with a copy of the Report and another copy of the Summaries of Rights, and if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify COMPANY within five business days of my receipt of the Report that I am challenging the accuracy of such information with STERLING.

I hereby consent to this investigation and authorize COMPANY to procure a Report on my background.

In order to verify my identity for the purposes of Report preparation, I am voluntarily releasing my date of birth, social security number and the other information and fully understand that all employment decisions are based on legitimate non-discriminatory reasons.

The name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report is:

Sterling InfoSystems, Inc. | 1 State Street 24th Floor New York, NY 10014 | 877-424-2457 | or | 5750 West Oaks Boulevard, Ste. 100 Rocklin, CA 95765 | 800-943-2589 | or | 6111 Oak Tree Boulevard, Independence, OH 44131 | 800-853-3228

☒ **California, Maine, Massachusetts, Minnesota, New Jersey & Oklahoma Applicants Only:** I have the right to request a copy of any Report obtained by COMPANY from STERLING by checking the box. (Check only if you wish to receive a copy)

**California, Connecticut, Maryland, Oregon, Vermont and Washington State Applicants Only (AS APPLICABLE):** I further understand that COMPANY will not obtain information about my credit history, credit worthiness, credit standing, or credit capacity unless: (i) the information is required by law; (ii) I am seeking employment with a financial institution (California, Connecticut and Vermont only – in California the financial institution must be subject to Sections 6801-6809 of the U.S. Code and in Vermont it must be a financial institution as defined in 8 V.S.A.§ 11101(32) or a credit union as defined in 8 V.S.A. § 30101(5)); (iii) I am seeking employment with a financial institution that accepts deposits that are insured by a federal agency, or an affiliate or subsidiary of the financial institution or a credit union share guaranty corporation that is approved by the Maryland Commissioner of Financial Regulation or an entity or an affiliate of the entity that is registered as an investment advisor with the United States Securities and Exchange Commission (Maryland only); (iv) I am seeking employment in a position which requires access to confidential financial information (Vermont only); (v) I am seeking employment in a position which requires a financial fiduciary responsibility to the employer or a client of the employer, including the authority to issue payments, collect debts, transfer money, or enter into contracts (Vermont only); (vi) COMPANY can demonstrate that the information is a valid and reliable predictor of employee performance in the specific position being sought or held; (vii) I am seeking employment in a position that involves access to an employer's payroll information (Vermont only); (viii) **the information is substantially job related, and the bona fide reasons for using the information are disclosed to me in writing, (complete the question below)** (Connecticut, Maryland, Oregon and Washington only);(ix) I am seeking employment as a covered law enforcement officer, emergency medical personnel, firefighter police officer, peace officer or other law enforcement position (California, Oregon and Vermont only - in Oregon the police or peace officer position must be sought with a federally insured bank or credit union and in Vermont the law enforcement officer position must be as defined in 20 V.S.A. § 2358, the emergency medical personnel must be as defined in 24 V.S.A. § 2651(6), and the firefighter position must be as defined in 20 V.S.A. § 3151 (3)); (x) the COMPANY reasonably believes I have engaged in specific activity that constitutes a violation of law related to my employment (Connecticut only); (xi) I am seeking a position with the state Department of Justice (California only) (xii) I am seeking a position as an exempt managerial employee (California only); and/or (xiii) I am seeking employment in a position (other than regular solicitation of credit card applications at a retail establishment) that involves regular access to all of the following personal information of any one person: bank or credit card account information, social security number, and date of birth,, I am seeking employment in a position that requires me to be a named signatory on the employer's bank or credit card or otherwise authorized to enter into financial contracts on behalf of the employer, I am seeking employment in a position that involves access to confidential or proprietary information of the Company or regular access to $10,000 or more in cash (California only).

**Bona fide reasons why COMPANY considers credit information substantially job related (complete if this is the sole basis for obtaining credit information) or in California the COMPANY'S basis for the credit check.**

The reason for running a credit report will be provided to me by my potential employer/employer on a separate document.

**NY Applicants Only:** I also acknowledge that I have received the attached copy of Article 23A of New York's Correction Law. I further understand that I may request a copy of any investigative consumer report by contacting STERLING. I further understand that I will be advised if any further checks are

requested and provided the name and address of the consumer reporting agency.

**California Applicants and Residents:** If I am applying for employment in California or reside in California, I understand I have the right to visually inspect the files concerning me maintained by an investigative consumer reporting agency during normal business hours and upon reasonable notice. The inspection can be done in person, and, if I appear in person and furnish proper identification; I am entitled to a copy of the file for a fee not to exceed the actual costs of duplication. I am entitled to be accompanied by one person of my choosing, who shall furnish reasonable identification. The inspection can also be done via certified mail if I make a written request, with proper identification, for copies to be sent to a specified addressee. I can also request a summary of the information to be provided by telephone if I make a written request, with proper identification for telephone disclosure, and the toll charge, if any, for the telephone call is prepaid by or directly charged to me. I further understand that the investigative consumer reporting agency shall provide trained personnel to explain to me any of the information furnished to me; I shall receive from the investigative consumer reporting agency a written explanation of any coded information contained in files maintained on me. "Proper identification" as used in this paragraph means information generally deemed sufficient to identify a person, including documents such as a valid driver's license, social security account number, military identification card and credit cards. I understand that I can access the following website - http://www.sterlinginfosystems.com/privacy - to view STERLING'S privacy practices, including information with respect to STERLING'S preparation and processing of investigative consumer reports and guidance as to whether my personal information will be sent outside the United States or its territories.

**Washington State applicants or employees only:** You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

LAW ENFORCEMENT AGENCIES AND OTHER ENTITIES FOR POSITIVE IDENTIFICATION PURPOSES REQUIRE THE FOLLOWING INFORMATION WHEN CHECKING PUBLIC RECORDS. IT IS CONFIDENTIAL AND WILL NOT BE USED FOR ANY OTHER PURPOSES. PLEASE PRINT CLEARLY.

| Signed | Today's Date |
|---|---|
| Electronic Signature | 2/12/2015 |
| Franklyn Ray Medina | Mechandiser |
| Name as it appears on your driver's license | Position Applied For |

| Social Security Number | Date of Birth | Driver's License Number | State |
|---|---|---|---|
| 234 | /1985 | 87 | PA |

Other names you have used or are also known as, including maiden name, name changes and any aliases

| | Street | Apt.# | City | State | Zip Code | From Mo./Yr. | To Mo./Yr. |
|---|---|---|---|---|---|---|---|
| Current Address: | Redacted | | Wallingford | PA | Redacted | 3/2006 | |
| Former Address: | | | | | | / | / |
| Former Address: | | | | | | / | / |
| Former Address: | | | | | | / | / |

| name | Medina, Franklyn Ray | date: | 2/12/2015 |
|---|---|---|---|
| sign | *Franklyn Medina* | | |

https://secure.sterlingdirect.com/sys/?v=DOC_VIEW&CONSENTID=Cahk0yfjed1sQNSv... 4/22/2016